I call the next case, Decatur Memorial Hospital v. The Workers' Compensation Commission, 4100109. Counselor, please. Good afternoon, Your Honors. Julie Garrison on behalf of the appellant, Decatur Memorial Hospital. We're here today on an accident issue, and it is the Manifest Weight case. We have essentially testimony given four years after the events surrounding this claim. And at the arbitration hearing, the petitioner testifies that she was at work on a Wednesday. She says it was May 21, 2003. After work, she was transporting linen. She experienced acute back pain. She called her co-worker and she immediately called her supervisor. And yet, the rest of the record, she never quite tells, has told that same story that she tells four years after the alleged incident. There's, you know, there's extensive testimony. There are multiple times that she gave the same date, and she virtually, in all the medical records, gave the same story about how she got injured. Well, I'll grant you that the one thing that's consistent in her test, or in her, you know, the recordings of her statements and medical histories, is that she was lifting linen. But I think it's significant and not just coincidental that that is exactly what the eyewitness's testimony said that she was going to tell them, you know, when she went to the hospital. Would we be here if it weren't for the second and third cousins deciding they were going to call the hospital? Well, that's a good question. I mean, the witnesses are not employees of the hospital. They voluntarily came to the hospital. They were subpoenaed to testify. But there are other documentary discrepancies and inconsistencies. It's not just the testimony that the cousins provided. I mean, the first history this employee gives is about five days down the road on Sunday, May 25th. And after she has worked for a very short period of time, she ends up in the emergency room. And at that time, she gives, or at least there are, I think, three different histories in that initial emergency room record. One of them says May 20th. That's not the date she testifies to. The doctor doesn't document any particular date. It does say something about the previous Wednesday, but no date associated with it. And then you look at, well, what happens between May 21st and May 25th when she gives that history? Well, on May 21st, she was going to her own personal physician. She actually sees two physicians that day. The records are in the record. She was there for an orthopedic heel, unrelated heel and foot condition. But she says nothing about low back or leg symptoms, although she testifies that at that point she was in acute pain. So nothing there. She's not scheduled to work on that Thursday. Doesn't seek any treatment. She calls in on Friday. She doesn't seek any treatment that day. She goes to work on Saturday. She works her full shift. No problems are reported. She doesn't seek any medical attention. She's performing extensive physical duties. How would you respond to this argument that what you are arguing goes to issues of weight of the evidence and the credibility of the witnesses? And if no, it is not our function to reweigh the evidence or reassess the credibility of the witnesses. How do you respond to the argument that that's basically what you're asking us to do? Well, the way I would respond is twofold. On one hand, you have what she testified at arbitration. And then you look at everything else in the record cumulatively. How does that actually relate forward to what she's testifying four years down the road at arbitration? And the support's not there. The support's not there with the witness testimony. The support's not there from documentary evidence. The support's not there. It's not just the cousin's testimony. It's the testimony of her supervisor, who I think was unequivocal. She didn't report this incident to me, even though she claimed she had. And it only makes sense that that was the case because everyone agrees, well, the procedure is to fill out an accident report. I mean, that's in virtually every case I've tried. I'm sure you hear it over and over. And yet the petitioner says, well, that's not what happened. She told me just from my office that she'd give me some over-the-counter medication. And the supervisor says, that didn't happen. There's no way that happened. I would never do that. That's not a policy. Isn't that a credibility issue for the commission to resolve, though? Well, you know, there is that case. And I've cited it before. I think it's a pretty compelling case, the Chicago Messenger case, where the commission found that the employee was credible. You know, was a credible witness or testified credibly at arbitration. And yet when it got to the courts, the courts said, no, they're not credible. And here's why they're not credible. Because there's all this stacked up against her. All these conflicting statements stacked up against her. It actually was the gentleman in that case. Conflicting statements that the claimant himself gave. We have that in this case. All these conflicting statements that the petitioner herself gave. Also in the Chicago Messenger case, there was other evidence, documentary, witness evidence, that said, no, to the contrary, this person got injured not the way they testified at arbitration, but away from the employment. We have the same situation in this case. So, right, I understand what you're saying. Isn't it just credibility and re-weighing? I don't think so, because when it's so out of balance, it's so striking, it's overwhelming. That was language that the Chicago Messenger court used. Is there any evidence in the record that supports the petitioner's decision? Is there any evidence? Is there evidence? There is some evidence. I think there is some evidence, I would give you that. I don't think that's the manifest way of saying that there has to be any evidence. You talk about the 25th she went to the emergency room. There is a patient information sheet, a computerized, generated sheet, that shows the date of accident, May 20th. But in the actual records, the emergency room visit shows she reported an onset date of the 21st. So that's consistent. Somebody else has a computer generated sheet, which you're referring to. But throughout all of these records, there are multiple times that she reports it on May 21st. There are some times she reports a different date, or the Friday before a holiday, and so forth. Can't the commission determine between those two? She reports four different ones. Four different days, actually, are contained in this record. There's the 20th. That was a couple times. The 21st, a couple times. The 23rd, her own husband said he was sure it happened the 23rd, because he remembered he took care of her on that next Saturday. And then he backed off that in his testimony. He said, well, you know, it was so long ago, I can't recall. There's doctors down the road. There's a doctor, Mike Mayer, who saw her three months down the road in September. He documents, I think, the 23rd. And then even three years down the road, there's yet another doctor statement that goes back to the 20th. And all of these big discrepancies you're talking about are within a day or two of each other. The 20th, the 21st, the 24th. Well, they are within a day or two. But, you know, if you look at the sequence of events, what happened between May 21st and May 27th, when it finally comes to the hospital's attention, what she's claiming, I think it's significant that there are all these dates out there. And, you know, is there any evidence supporting it? Yeah, there is. Other than her testimony, there is. But is it reasonable when all this other evidence exists in the record? Is that what we're supposed to decide at this level? No. But is it reasonable for the commission to... Well, the commission can make reasonable inferences from the evidence, but the commission cannot make unreasonable inferences. The commission cannot speculate. I think they got into speculation in their findings regarding the witness testimony from Terry Dixon and Kay Dixon. Their testimony was consistent. And you have to look at this as a whole and say, well, she works all day Saturday. No problems are reported. Doesn't go seek any attention. And then she goes home, and they say, well, she fell. She fell right in front of us in her own dining room. And she was complaining about her back, and we offered to take her to get medical help. And she tells them, no, I'm going to go to work, and I'm going to tell them that I hurt my back lifting laundry. And that's exactly what she does the next morning. The commission did not believe that testimony, right? I don't believe they said they did not believe it. They said there was animosity between... The arbitrator said that it was not credible, the testimony was not credible, and the commission adopted that. Can't they do that? The commission's findings, which are the arbitrator's findings in this case, they just adopted her findings, I think do a great job of reciting the evidence in this case. Do they discredit these witnesses? Other than they didn't say, well, they're not believable. They said there was animosity. Isn't that part of credibility? Okay, two things are brought up. That there was a problem with a family book. But the petitioner or her husband, neither one of them ever affirmatively explained what that's about. And Terry and Kay Dixon, they deny it completely. There's also some discussion about that there had been involvement in a car accident. Again, nobody explains, well, what is that about? They say, no, there wasn't a problem with that. In fact, that got resolved. There wasn't a problem with that. So for the commission to say, well, there was animosity, and we discount their testimony, I don't think is reasonable. I think it's speculation. So that's why we're here. And I just ask the commission to consider, excuse me, the court to consider the Chicago Messenger case. And under the holding there and the discussion there about credibility and overwhelming evidence and what makes sense and what doesn't make sense, what's logical, what's illogical. Thank you. Counselor, please. Good afternoon. May it please the court. My name is Kathy Olivero for the employee. I think the justice hit it right on the head when we asked if we would be here, but for the cousins. This claim had been accepted, and benefits were paid if you look at the request for hearing form. The times that the employee was off work, she did receive benefits when she had her surgery. And that was all before whatever the cousins had to say about the subject, the inconsistencies in terms of a day or two difference in the accident, as well as the supervisor denying that the employee reported it on the day of the accident. Now, counsel cites the Chicago Messenger case, and as I indicate in my brief, I think it's dramatically different. In workers' comp, we place a lot of weight on that initial medical record. In this case, that was the record of May 25, 2003. And in that record, the employee here did give the history of the work accident. In the Chicago Messenger case, the employee did not give the history of a work accident and actually indicates to the medical provider there who initially saw him that his complaint started months before this work accident that he claimed. In this medical record, beside the history, there's also information in this record that the employee tells the ER personnel that she invited her boss, and I'm not certain what that actually should have said, that her back was uncomfortable and hurting. Now, this is on the 25th, before even her supervisor acknowledges on the 27th she did report it. Then she goes on to say, patient was off on Thursday, called in on Friday, work on Saturday. So there's a little bit of a disconnect there. But my client would have had to foresee that these cousins were going to come in and say on Saturday she injured herself, yet she called in on that Friday before, called in sick because her back was hurting. She would have had to foresee that these cousins came in on Saturday, and yet report this to the medical personnel when she was initially seen on May 25th. I think the Commission's decision is amply supported by the evidence. Any questions? Thank you. Thank you, counsel. Rebuttal. Thank you, counsel. Clerk will take the matter under advisement for disposition.